# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ISREAL BOTELLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:18-cv-00549 |
| | ) |
| TENNESSEE DEPARTMENT OF | ) JUDGE CAMPBELL |
| CORRECTIONS, *et al.*, | ) MAGISTRATE JUDGE |
| | ) NEWBERN |
| Defendants. | ) |

## MEMORANDUM

Plaintiff Isreal Botello, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against the Tennessee Department of Corrections (TDOC); TDOC Commissioner Tony Parker; CCA; TTCC Warden Russell Washburn; TTCC Lieutenant John Doe; TTCC Sergeant f/n/u Draper; TTCC STG Coordinator John Doe; TTCC Internal Affairs Investigator John Doe; TTCC Sergeant Martinez; and TTCC Corrections Officer f/n/u Topper, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I.     PLRA Screening Standard

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed in forma pauperis, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement.

42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir.2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

## II. Section 1983 Standard

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. Alleged Facts

Plaintiff alleges that, on January 2, 2017, while an inmate of the Trousdale Turner Correctional Center (TTCC), he was charged with an assault on staff member Sergeant f/n/u Draper. Plaintiff believes "he was picked out to be the Hispanic guy who assaulted Sargent [sic] Draper solely because he was Hispanic . . . ." (Doc. No. 1 at 1). After the accusation, Plaintiff was taken to medical, examined, and then taken to "SEG" where Plaintiff alleges he was assaulted by TTCC Lieutenant John Doe in the shower "while Petitioner was waiting to be stripped searched." (*Id*. at 3). During the assault, Plaintiff alleges that TTCC STG Coordinator John Doe "stood by and watched." (*Id*.)

Plaintiff was held in segregation for twenty-two days until the investigation was complete. His disciplinary hearing was held on January 24, 2017. The reviewing designated supervisor found that Plaintiff failed to comply with verbal directives but was not involved in physically assaulting

Sergeant Draper. (*Id*. at 25). He found Plaintiff guilty of defiance, but not assault on a staff member.

On January 31, 2017, Plaintiff was transferred to the Morgan County Correctional Complex (MCCC) and placed in "max custody." He remained in max custody for seventeen days until he was transferred to SCCF on February 17, 2017, where Plaintiff now is in custody. Plaintiff believes he was "was mistakenly placed on Maximum Custody, and the fact that [he] was taken off 41 days later should in itself go to prove that it was due to a clerical error." (*Id*. at 32).

Plaintiff's parole eligibility review date was set for June 2017 but, as a result of the max custody classification, he was told he was no longer eligible to be placed on the parole docket in June 2017. He was told that he had to be "off max custody" for two years before becoming eligible for a parole docket. Because Plaintiff had been "reclassed" from max custody on February 13, 2017, he will not be eligible for a parole docket until after February 14, 2019. Plaintiff believes that he should be eligible for parole sooner because the assault on staff charge against him was dismissed; that charge was responsible for staff changing his classification to "max custody."

Plaintiff filed a grievance on August 8, 2017, "concerning the denial of his parole." He sent a second letter to IPO Kim Jairels on September 6, 2017. Plaintiff sent an information request to IPO on November 3, 2017, concerning his parole. IPO confirmed that max custody status had been removed and placed Plaintiff on the parole hearing docket for February 2018. Plaintiff sent a letter to the Tennessee Board of Parole asking that his hearing be expedited. Plaintiff also filed a request to expedite his hearing, stating that he was not opposed to being deported upon release from confinement. (*Id*. at 36).

Plaintiff believes the procedure used to test him for drugs was wrongfully administered and that policy was not followed. He believes Defendants drug tested him as retaliation for his complaints and grievances concerning the January 2, 2017 disciplinary event.

IV. **Analysis**

    A. **Placement in segregation and change of security classification**

The complaint alleges that unspecified Defendants violated Plaintiff's due process rights because Plaintiff was placed in segregation during the investigation of his assault on staff charge, was reclassified as a super max prisoner as a result of the charge and, as a result, is ineligible for parole for another two years.

First, inmates do not have a liberty interest in a particular security classification or in freedom from segregation. *Miller v. Campbell*, 108 F. Supp.2d 960, 963 (W.D. Tenn. 2000) (citations omitted). Second, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. *Id.* at 484. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or will impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

5

Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 Fed. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

With regard to the nature of Plaintiff's stay in segregation, other than Plaintiff's singular reference to "deplorable conditions of segregation" (Doc. No. 1 at 4), there are no allegations in the complaint concerning the conditions Plaintiff faced in segregation. In any event, the Constitution does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Nor does the Constitution mandate comfortable conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2400, 69 L. Ed. 2d 59 (1981). However, the Eighth Amendment of the United States Constitution imposes an obligation to provide prisoners with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984).

Here, Plaintiff does not claim that he was denied adequate food, clothing, shelter, recreation, or medical care while in segregation. Neither has he alleged any injury or harm as a result of the alleged "deplorable conditions" of segregation. (Doc. No. 1 at 4). Without an allegation of injury or harm, Plaintiff does not state a viable Eighth Amendment claim. *See Moore v. Merchant*, No. 5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013) (finding

that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'").

With regard to the duration of Plaintiff's confinement in segregation, the Supreme Court concluded in *Sandin* that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in segregation for a relatively short period of time does not require the protections of due process. *Rimmer-Bey*, 62 F.3d at 790-91; *see Joseph v. Curtin*, 410 Fed. App'x. 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit also has held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g., Jones*, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso*, 465 Fed. App'x. 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Notwithstanding the duration of Plaintiff's stay in segregation, the complaint contends that Plaintiff should not have been moved into segregation prior to the disposition of his assault on

7

staff claim. However, the Sixth Circuit has held that the transfer of state prisoner to segregation before adjudication of a misconduct charge did not involve the deprivation of a liberty interest protected by the Due Process Clause, absent any allegation that the segregation was an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Murray v. Unknown Evert*, 84 Fed. App'x 553, 555 (6th Cir. 2003).

Based on the cases cited above, the Court finds that Plaintiff's 41-day period of segregation under the conditions described in the complaint did not constitute "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see Williams v. Wilkinson*, 51 Fed. App'x 553, 557 (6th Cir. 2002) (where, as punishment for the drug test that prison authorities allege plaintiff failed, plaintiff received a suspended fifteen-day sentence in disciplinary segregation, he lost a promised reduction in his security classification, was denied a furlough, and had to participate in a substance abuse program that interfered with his ability to earn money at his prison employment, court held that none of these punitive measures qualifies as a "significant and atypical hardship."). Plaintiff's due process claims therefore will be dismissed.

### B. Parole ineligibility

Plaintiff also alleges that his change in security classification affected his eligibility for parole and, once the disciplinary board dismissed the charge against him that triggered the change in security classification, Plaintiff should have been eligible for parole immediately. He alleges that the fact that he must wait two years to become parole-eligible again violates his due process rights. However, there is "no constitutional or inherent right of a convicted person to be conditionally released" on parole. *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). A

constitutionally protected liberty interest arises in this context only if a prisoner has a "legitimate claim of entitlement to parole . . . created . . . by the operation of state law." *Id.* (citation and internal quotation omitted). The Sixth Circuit has long recognized that Tennessee inmates have no state-created liberty interest in the possibility of parole, "[b]ecause Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board[.]" *Hawkins v. Tenn. Bd. of Prob. and Paroles*, No. 07-2326, 2007 WL 1574241, at *3 (W.D. Tenn. May 29, 2007) (citing, *e.g., Wright v. Trammell*, 810 F.2d 589, 591 (6th Cir. 1987)). Section 40-28-117(a) of the Tennessee Code defines parole as "a privilege and not a right" and provides that, if the parole board deems parole to be appropriate, "the prisoner may be paroled and if paroled shall be allowed to go upon parole . . . upon the terms and conditions as the board shall prescribe[.]" *Id.* Given the discretion vested in parole boards in Tennessee, "a prisoner may seek to enforce statutes or regulations that govern the parole process as a matter of state law, but 'procedural statutes and regulations governing parole do not [alone] create federal procedural due process rights.'" *Wershe v. Combs,* 763 F.3d 500, 506 (6th Cir. 2014) (quoting *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994)).

While the Court acknowledges Plaintiff's frustration with having to wait two more years before his next parole eligibility hearing, the law affords no relief to Plaintiff. "Absent an inherent constitutional right to parole or a protected liberty interest created by state law, the plaintiff has no due process claim based upon the denial of an earlier parole eligible date." *Chilton v. White*, No. 2:04–CV–269, 2005 WL 1594574, at *1 (E.D. Tenn. July 6, 2005). Because Tennessee inmates have no state-created liberty interest in the possibility of parole, Plaintiff's due process claims based on the loss of his June 2017 parole eligibility hearing and the required two-year delay in

9

obtaining another parole eligibility hearing fail to state claims under Section 1983 upon which relief can be granted. These claims will be dismissed.

### C. Retaliation

The complaint alleges that unnamed "Respondents" retaliated against the Plaintiff because he filed inmate grievances. (Doc. No. 1 at 2). A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id*. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X,* 175 F.3d at 396. Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 Fed. App'x 553, 556 (6th Cir. 2003).

Filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). While Plaintiff contends that he was subjected to acts of retaliation—that he was drug tested and his drug test was "wrongfully administered"– Plaintiff does not provide any further information pertaining to the alleged acts of retaliation. It is unclear from the complaint exactly how the drug test ties in with the complaint's other allegations and what effect, if any, the drug test results had on Plaintiff. Further, the complaint does not allege

who retaliated against Plaintiff because he engaged in the protected conduct of filing grievances.

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), a court's "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted); *see also Johnson v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas*., 73 Fed. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."). The Court therefore finds that Plaintiff's conclusory allegations of retaliatory motive with no concrete and particularized facts fail to state retaliation claims under Section 1983 upon which relief can be granted. As a result, Plaintiff's retaliation claims must be dismissed.

### D. Failure to follow facility policies

The complaint alleges that Defendants "deviat[ed] from their own policies." (Doc. No. 1 at 4). However, alleged violations of TDOC policies are not actionable under Section 1983. *See Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995)(stating that, after *Sandin*, it became clear that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015); *Levine v. Torvik*, 986 F.2d 1505, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Consequently, the Court finds that the complaint fails to state Section 1983 claims arising from any Defendants' failure to follow TDOC or facility policies.

### E. Excessive force

The complaint alleges that Plaintiff was assaulted by TTCC Lieutenant John Doe in the shower "while Petitioner was waiting to be stripped searched." (Doc. No. at 3). During the assault, Plaintiff alleges that TTCC STG Coordinator John Doe "stood by and watched." (*Id.*)

From the complaint, it appears Plaintiff was a convicted prisoner, not a pre-trial detainee, at the time of the alleged use of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision. *See Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) ("The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'")

(quoting *Kingsley v. Hendrickson*, ___ U.S. ___, ___ 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015)).

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)). In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring a court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether "the pain inflicted was sufficiently serious." *Cordell*, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id*. (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)) (alteration in original).

In determining whether the force used was applied in a good faith effort to restore discipline or rather inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred."

*Cordell*, 759 F.3d at 581 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.'" *Cordell*, 759 F.3d at 581 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)) (alteration in original). A significant physical injury is not required to establish the objective component of an Eighth Amendment claim. *Wilkins*, 559 U.S. at 1178-79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In the end, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S. Ct. 995.

Based on the allegations in the complaint, the Court finds that the complaint states colorable Eighth Amendment excessive force claims under Section 1983 against Defendants TTCC Lieutenant Doe and TTCCO STG Coordinator Doe in their individual capacities. Although the complaint alleges that only Lieutenant Doe assaulted Plaintiff, the complaint alleges that STG Coordinator Doe watched the assault and failed to intervene. *See Walls v. Tenn. Dep't of Corr.*, No. 17-2549-JPM-tmp, 2018 WL 3468379, at *5 (W.D. Tenn. July 18, 2018) ("A guard who stands and watches while another guards beats a prisoner violates the Constitution . . . ."); *Johnson v. C/O Lane*, No. 15-2260-JDT-tmp, 2016 WL 1734111, at *3 (W.D. Tenn. Apr. 29, 2016) (on PLRA screening, finding that prisoner "has alleged a plausible claim for excessive force in violation of the Eighth Amendment" against the guard who allegedly assaulted plaintiff as well as the guards who allegedly "stood by and did not intervene."). The allegations of the complaint with respect to Lieutenant Doe and STG Coordinator Doe warrant further factual development.

14

Although designation of "John Doe" or "Jane Doe" defendants is not favored, it is permissible when the defendants' identities are not known at the time the complaint is filed, but may be determined through discovery. *See Berndt v. Tenn.*, 796 F.2d 879, 882-84 (6th Cir. 1986). The Court concludes that it would be inappropriate to dismiss the complaint against the John Doe Defendants at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery.

Next, construed liberally, the complaint maintains that CCA should be liable for the guards' conduct. Because it performs a traditional state function in operating a state prison, CCA acts under the color of state law. *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 814 (6th Cir.1996). However, unlike the state, CCA is not entitled to Eleventh Amendment immunity and may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold CCA liable, Plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *See Street*, 102 F.3d at 818. Liability attaches only if CCA's policies were shown to be the "moving force" behind Plaintiff's injury. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Here, however, the complaint does not describe how a CCA policy is responsible in full or in part for Plaintiff's injury. Moreover, an allegation that CCA had a duty to hire and train competent staff is insufficient to identify a CCA policy and tie that policy to Plaintiff's injury. *See Baxter v. Corizon Health, Inc*., No. 1:14-cv-1347-JDT-egb, 2015 WL

15

5707062, at *5 (W.D. Tenn. Sept. 28, 2016). Therefore, for purposes of the initial screening of Plaintiff's claims against CCA required by the PLRA, the Court finds that the complaint fails to state Section 1983 claims upon which relief may be granted against CCA.

To the extent that the complaint alleges TDOC bears any liability for the guards' conduct, the Eleventh Amendment to the United States Constitution bars Section 1983 claims against a State or any arm of a State government. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). TDOC is considered part of the State of Tennessee for purposes of federal civil rights claims and therefore is not a suable entity under Section 1983, either for damages or injunctive relief. *See Hix v. Tenn. Dep't of Corrs.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("The TDOC is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant.") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). Thus, Plaintiff's claims against TDOC must be dismissed because TDOC is immune from suit.

The complaint also names Commissioner Parker as a Defendant. Supervisory officials, who are aware of the unconstitutional conduct of their subordinates but fail to act, generally cannot be held liable in their individual capacities. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). *See Rizzo v. Goode*, 423 U.S. 362, 371,

96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Because the complaint does not allege that Commissioner Parker was directly responsible for any of the alleged violations of Plaintiff's rights, the claims against Parker must be dismissed.

Likewise, Plaintiff names TTCC Warden Washburn as a Defendant. To hold a warden liable for the conduct of his subordinates, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676. There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a Section 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted).

The complaint does not allege that the Warden encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it. Neither does the complaint allege that Warden "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of a subordinate. *Id*. Simply, there are no allegations in the complaint connecting

17

Warden to the alleged assault against Plaintiff other than the fact that he is the warden of the facility where Plaintiff was incarcerated at the time of the assault. Consequently, the complaint fails to state Section 1983 claims upon which relief can be granted as to Warden Washburn. These claims will be dismissed.

### F. Racial discrimination claims/ Title VII

The complaint alleges that Plaintiff "was picked out to be the Hispanic guy who assaulted Sargent [sic] Draper solely because he was Hispanic; not based on the facts; that such stereotyping-picking-him-out was racially motivated and racially discriminating [sic] him in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 1981, 1988, 2000, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.*" (Doc. No. 1 at 1).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race[.]" 42 U.S.C. § 2000e–2(a)(1). Because Plaintiff's allegations do not concern an employment relationship, Title VII is not an appropriate statute under which to bring Plaintiff's claims of racial discrimination. Therefore, Plaintiff's Title VII claims against all Defendants must be dismissed for failure to state claims under Section 1983 upon which relief can be granted.

The complaint also alleges a violation of Section 1981, which provides in pertinent part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

> punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim under Section 1981, a plaintiff must allege (1) membership in a racial minority; (2) the defendants intended to discriminate on the basis of race; and, (3) discrimination concerning one of the activities enumerated in Section 1981. *King v. City of Eastpointe*, 86 Fed. App'x 790, 800 (6th Cir. 2003). These allegations should be supported by specific acts, practices, or policies which resulted in the alleged discrimination. *See id.*

Although the complaint generally alleges that Plaintiff believes unspecified Defendants discriminated against Plaintiff because of his race, the complaint does not include any specific allegations as to what these unidentified Defendants did or did not do and what led Plaintiff to believe their actions were because of Plaintiff's race. A bare assertion of a discriminatory purpose is insufficient to state a Section 1981 claim. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008); *Page v. City of Monroe*, 24 F. App'x 249, 251 (6th Cir. 2001); *Freeman v. Helldoerfer*, No. 99–3519, 2000 WL 125885, at *2 (6th Cir. Jan. 28, 2000); *see also Brooks v. Am. Broad. Cos.*, 932 F.2d 495 (6th Cir.1991). "This court has adopted the requirement that a plaintiff allege with particularity all material facts to be relied upon when asserting that a governmental official has violated a constitutional right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). The Court finds that Plaintiff's claims brought pursuant to 42 U.S.C. § 1981 must be dismissed.

### G. Remaining Defendants

Draper is the officer Plaintiff was accused of assaulting, but there is no other mention of Draper in the complaint. Other than being listed as Defendants on page two of the complaint, Martinez and Topper are not mentioned in the narrative of the complaint. (*See* Doc. No. 1 at 3-

4). A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982). Because Plaintiff does not allege the personal involvement of Draper, Martinez, and Topper in the events set forth in the complaint, Plaintiff has not established a basis for imposing individual liability on these Defendants. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Consequently, any claims against Draper, Martinez, and Topper will be dismissed.

**V.      Conclusion**

Having screened the complaint pursuant to the PLRA, the Court finds that Plaintiff states colorable Eighth Amendment claims under Section 1983 against TTCC Lieutenant John Doe and TTCC STG Coordinator John Doe in their individual capacities. These claims will proceed for further development. However, Plaintiff's remaining allegations fail to state claims under Section 1983 upon which relief can be granted, and these claims and remaining Defendants will be dismissed. 28 U.S.C. § 1915A.

An appropriate Order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE