IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **ISREAL BOTELLO,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:18-cv-00549 |
| **TENNESSEE DEPARTMENT OF CORRECTIONS,** *et al.*, | ) ) ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| Defendants. | | |

### ORDER AND MEMORANDUM

Pending before the Court is a motion to reconsider filed by Plaintiff (Doc. No. 8) in which he asks the Court to reconsider its prior decision to dismiss Plaintiff's retaliation claims and to dismiss Defendants Tony Parker and Russell Washburn from this action.

**I.  Background**

On June 11, 2018, Isreal Botello, an inmate of the South Central Correctional Facility (SCCF) in Clifton, Tennessee, filed this pro se, in forma pauperis action under 42 U.S.C. § 1983 against the Tennessee Department of Corrections (TDOC); TDOC Commissioner Tony Parker; CCA; TTCC Warden Russell Washburn; TTCC Lieutenant John Doe; TTCC Sergeant f/n/u Draper; TTCC STG Coordinator John Doe; TTCC Internal Affairs Investigator John Doe; TTCC Sergeant Martinez; and TTCC Corrections Officer f/n/u Topper, alleging violations of Plaintiff's civil and constitutional rights. (Doc. No. 1).

By Order and Memorandum Opinion entered on July 26, 2018, the Court screened the complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2) and 1915A, and found that the complaint stated colorable Eighth Amendment excessive force claims under 42

1

U.S.C. § 1983 against TTCC Lieutenant John Doe and TTCC STG Coordinator John Doe in their individual capacities. (Doc. No. 4 and 5). The Court found that Plaintiff's remaining allegations failed to state claims under Section 1983 upon which relief can be granted and dismissed those claims and Defendants. The Court then referred the case to the Magistrate Judge for case management.

On August 6, 2018, Plaintiff filed a motion to reconsider the dismissal of Defendants Parker and Washburn and of Plaintiff's retaliation claims. (Doc. No. 8).

**II.     Analysis**

Because there is no federal procedural rule permitting a "motion for reconsideration," the Court construes Plaintiff's filing (Doc. No. 8) as a motion to alter or amend judgment under Rule 59(e), Fed. R. Civ. P. Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999). The movant may not use Rule 59 to re-argue the case or to present evidence that should have been before the court at the time judgment entered. *See Roger Miller Music, Inc., v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (collecting cases).

Rule 59 motions must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). Here, Plaintiff's motion was filed within 28 days after entry of judgment; thus, the motion is timely under Rule 59.

The Court has considered Plaintiff's arguments and has reviewed all relevant material in the record. Plaintiff does not seek to amend his complaint to add claims based on newly discovered evidence or to add different theories of relief than those theories Plaintiff presented in his original

2

complaint. Plaintiff does not allege that there has been an intervening change in controlling law that would require the Court to revisit its previous analysis. Instead, Plaintiff insists that the Court's dismissal of Warden Washburn and Commissioner Parker was in error because these Defendants "became responsible" for the constitutional violations of their subordinates "when they [Defendants] failed to correct them in the course of their supervisory responsibilities, and affirmed the Plaintiff's grievance appeals to them." (Doc. No. 8 at 1). Later in his motion, Plaintiff elaborates: "Plaintiff did forward Commissioner Parker and Warden Washburn correspondence attesting to the facts asserted requesting[,] inter alia, they intervene and expedite his parole. Their decision to ignore/deny was in direct contravention to policy and the eventual taking him off max supported Plaintiff's claim that he was being targeted/singled out." (*Id*. at 3).[1]

As the Court explained previously (Doc. No. 4 at 16-18), because the complaint did not allege that Commissioner Parker was directly responsible for any of the alleged violations of Plaintiff's rights, the Court dismissed Plaintiff's claims against Parker. (*See id*.) Likewise, because there were no allegations in the complaint connecting Washburn to the alleged assault against Plaintiff other than the fact that he is the warden of the facility where Plaintiff was incarcerated at the time of the assault, and because the complaint did not allege that Washburn encouraged any instance of misconduct related to Plaintiff or was otherwise directly involved in it, the Court dismissed Plaintiff's claims against Washburn. (*See id*.)

---

[1] The Court previously analyzed Plaintiff's claims related to alleged policy violations and racial discrimination and found that those claims failed to state claims upon which relief can be granted; as a result, the Court dismissed those claims. (Doc. No. 4 at 12, 18-19).

Plaintiff relies on *Hicks v. Frey*, 992 F.2d 1450, (6th Cir. 1993),[2] in asserting that the Court should not have dismissed his claims against Washburn and Parker, claiming that "an official may be held liable for failure to supervise and control subordinates even though the official was not directly involved in the specific incident of misconduct."[3] (Doc. No. 8 at 1) (citing *Hicks*, 992 F.2d at 1455). In *Hicks*, a paraplegic inmate brought a Section 1983 suit alleging deliberate indifference to his medical needs. Defendant Frey was the officer in charge of jail, and Locke was the nurse in charge of medical services at the jail. The jury returned verdicts in favor of Hicks against Frey and Locke, and both defendants moved to alter or amend the verdicts, for judgment notwithstanding the verdict (JNOV), or for a new trial. The trial court found that "[t]he record supports Hicks['] position that Frey and Nurse Locke were personally involved in the unconstitutional conduct. There were questions of fact which allowed the jury to conclude that both defendants were deliberately indifferent to Hicks' serious medical needs." *Id*. at 1453.

On appeal, Frey argued that the fact he was the supervising official at the jail with the right to control jail employees was not enough to support a judgment against him. *See id.* at 1454. Locke argued that she, too, was entitled to have the verdict set aside pursuant to her motion for JNOV because it was "absurd" to hold her liable for alleged neglect of Hicks by other nurses under her supervision when all of these nurses were exonerated either by directed verdicts or jury verdicts. *Id*. The Sixth Circuit concluded that the district court properly submitted claims against

---

[2] Plaintiff also relies on decisions issued by courts outside of our Circuit. (Doc. No. 8 at 1-2). The Court is not bound by the decisions of courts in other Circuits. *See Terry v. Tyson Farms, Inc*., 604 F.2d 272, 278 (6th Cir. 2010) (recognizing that the Sixth Circuit is not bound by the law of other Circuits)

[3] The *Hicks* decision was abrogated in part by *Warren v. Prison Health Servs., Inc.*, 576 Fed. App'x 545 (6th Cir. 2014), in which the Sixth Circuit held that the deliberate indifference standard articulated in *Hicks* ("deliberateness tantamount to an intent to punish") "is not good law." *Id*. at 559 (quoting *Hicks*, 992 F.2d at 1455). The remainder of the *Hicks* decision appears to be good law.

Frey and Locke to the jury and properly denied their motions for JNOV. As to Locke, the Sixth Circuit held: "The jury could have believed that Locke displayed deliberate indifference to Hicks' serious medical needs both by failing to address them herself and by implicitly authorizing, approving, or knowingly acquiescing in unconstitutional conduct of others over whom she had supervisory authority. This is not equivalent to finding Locke liable under a *respondeat superior* theory." *Id*. at 1457.

With respect to Frey, the Sixth Circuit held:

> The case with respect to Frey is much closer because he had little direct, personal contact with Hicks. The jury could reasonably have inferred from the evidence, however, that the daily communications Frey acknowledged receiving about "Hicks' condition, his complaints then, the problems . . . with his condition within the facility," required further inquiry and action by Frey. In the absence of inquiry or at least some show of concern about Hicks' condition and the problems with that condition, the jury reasonably could have found that Frey at least acquiesced in the mistreatment of Hicks that the jury found occurred.
>
> There is another basis on which the jury could have found Frey deliberately indifferent. Hicks was a paraplegic who was completely dependent upon a wheelchair for any mobility. Yet he was placed in a cell too small to accommodate his wheelchair, and thus for about three months was confined to a bunk with no opportunity to move about or exercise his injured limbs. Further, the Care Plan recognized that as a paraplegic Hicks had problems controlling urination and bowel movements. Yet, Frey acknowledged knowing that Hicks had no access to a shower while in the isolation cell. Regardless of whether Frey ordered Hicks' confinement in lock down, he admitted knowing Hicks was so confined and that his treatment was different from that of other prisoners on the Med Walk.

*Id*. at 1457.

Plaintiff hangs his hat on the argument that Washburn and Parker became liable for others' conduct when Plaintiff sent grievances and letters to them and they failed to respond or take action

5

to help Plaintiff. (Doc. No. 8 at 2) ("Commissioner Parker and Warden Washburn knew and had clear knowledge that the Plaintiff was being assaulted, denied proper medical treatment, medications, as well as being retaliated and discriminated <u>through several grievances and letters that were sent to them; as well as Plaintiff's affidavit</u>.") (emphasis added). However, even though Defendants may have affirmed the denial of Plaintiff's grievances or may have failed to respond to those grievances or to letters from Plaintiff, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability. *See Wallis v. Tenn. Dep't of Corr.,* No. 17-2549-JPM-tmp, 2018 WL 3468379, at \*\*4-5 (W.D. Tenn. July 18, 2018) (dismissing claims where complaint did not allege that defendants were directly responsible for any of the alleged violations of plaintiff's rights, finding that defendant "cannot be held liable under § 1983 for failing to respond to the plaintiff's letter any more than Settles can be held liable for the acts of his subordinators without any implicit authorization, approval, or knowing acquiescence of the unconstitutional conduct of the offending party.") (citing *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.")); *see Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

*Hicks*, on which Plaintiff relies, makes clear that "liability cannot be based solely on the right to control employees." 992 F.2d at 1455. In addition, when suing a defendant in his or her individual capacity, as Plaintiff sued Washburn and Parker, a plaintiff must allege the personal involvement of the defendant in causing his injury. *Carrion v. Wilkinson*, 309 F.Supp.2d 1007, 1013–14 (N.D. Ohio 2004) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir.1992)); *see Palmer v. Lane*, 22 Fed. App'x 532, 533 (6th Cir. 2001) (holding that plaintiff did not state a Section 1983 claim against sheriff who had no personal involvement); *Winkler v. Madison County, Ky.*, No. 5:15-45-KKC-REW, 2017 WL 3585407, at *14 (E.D. Ky. Aug. 18, 2017) (holding jailer did not participate in the events leading to prisoner's claim and there was no evidence that jailer "somehow implicitly authorized or acquiesced in a deprivation of proper medical care[;]" thus, the claims against jailer failed under Section 1983); *Pruitt v. Lewis*, No. 06-2867, 2007 WL 4615947, at *4 (W.D. Tenn. Dec. 28, 2007) ("If the Court held Lewis liable under this set of facts, it would be doing so based solely on his right to control the unnamed deputy who released Pruitt, rather than on Lewis's own deliberate indifference towards the Plaintiff. As the right to control alone is insufficient to impose liability on the Sheriff, the Defendant's motion for summary judgment on the Eighth Amendment claim is granted."). Plaintiff's claims against Washburn and Parker were premised on their failure to respond to grievances and letters and on their supervisory roles. Neither Defendant was alleged to be personally involved in the alleged denial of Plaintiff's constitutional rights. Consequently, the Court finds that its previous decision to dismiss Plaintiff's Section 1983 claims against Warden Washburn and Commissioner Parker was correct.

Plaintiff also asks the Court to reconsider its dismissal of Plaintiff's retaliation claims under Section 1983. The Court dismissed Plaintiff's retaliation claims because, while the complaint

alleged that Plaintiff was subjected to acts of retaliation—that he was drug tested and his drug test was "wrongfully administered"– Plaintiff did not provide any further information pertaining to the alleged acts of retaliation. (Doc. No. 4 at 9-11). The Court found that it was unclear from the complaint exactly how the drug test related to the complaint's other allegations and what effect, if any, the drug test results had on Plaintiff. (*Id*. at 10). Further, the Court noted that the complaint did not allege who retaliated against Plaintiff because he engaged in the protected conduct of filing grievances; the complaint referred only to unnamed "Respondents." (*Id*.) (citing Doc. No. 1 at 2).

As the Court explained in its prior Memorandum, the Court is not required to create Plaintiff's claim for him. (*Id*. at 11) (citing *Payne v. Sec'y of Treas*., 73 Fed. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her")); *Johnson v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co*., 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original)). The Court finds that its prior decision to dismiss Plaintiff's retaliation claims--which consisted of conclusory allegations of retaliatory motive with no concrete and particularized facts--was correct.

### III.  Conclusion

Accordingly, the Court finds no clear error of law, no newly discovered evidence, or no intervening change in controlling law justifying the granting of Plaintiff's motion to alter or amend judgment under Rule 59(e), Fed. R. Civ. P.; *see GenCorp, Inc.*, 178 F.3d 804, 834. Nor do the

circumstances alleged by Plaintiff require the Court to alter or amend its previous decision to prevent manifest injustice. *See id.* Plaintiff's motion for reconsideration (Doc. No. 8) is therefore **DENIED**.

This case remains on referral to the Magistrate Judge pursuant to Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court. (*See* Doc. No. 5 at 4).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE